## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                              Case Number: 15-40094-DDC-ADM

RONNIE DAVONE MATHEWS,

        Defendant.

## MEMORANDUM AND ORDER

The district judge referred Defendant Ronnie Davone Mathews' Motion for Temporary Release (ECF No. 52) to the undersigned.  *See* FED. R. CRIM. P. 59(a).  On February 18, 2020, Mr. Mathews waived his right to a detention hearing pending his final revocation hearing, and the court ordered him detained on that basis.   He now seeks temporary release from custody pursuant to 18 U.S.C. § 3142(i) on the grounds that he seeks to limit his potential exposure to coronavirus disease ("COVID-19") because he contends that he is at an increased risk of suffering serious health complications and/or death if he contracts COVID-19.   As explained below, the court construes Mr. Mathews' motion as a motion to reconsider the court's prior detention order based on Mr. Mathews' waiver.   Construed as such, the motion is granted to the extent that the court will allow Mr. Mathews to revoke his waiver and the court will evaluate anew whether detention is warranted, but the motion is otherwise denied to the extent that he seeks release pending his final revocation hearing.   Mr. Mathews seeks relief under § 3142(i), but that statute does not apply to detention pending a final revocation hearing for a supervised release violation.   Even if the court construes Mr. Mathews' motion under the proper legal standard pursuant to 18 U.S.C. §

3143(a)(1), he has not met his burden to show by clear and convincing evidence that he is not a flight risk or a risk of harm to others if he were released according to his proposed release plan.

## I.   __BACKGROUND__[1]

Mr. Mathews was first convicted of a violent felony when he was 19 years old.   (ECF No. 9.)   The court mentions this prior conviction because the victim in that case is who he now proposes to live with if he is released pending his final revocation hearing.   In that case, K.B. was the victim of a domestic disturbance, and law enforcement officers were dispatched to Stormont Vail Hospital to meet with her.   K.B. had large bruises around her left eye area, upper right forearm, lower neck area, left and right upper arm, right thigh area, and both hands, as well as complete chest and rib pain.   (*Id.*)   She reported to officers that Mr. Mathews had physically abused her.   On August 2, 2013, Mr. Mathews was convicted of aggravated battery in Shawnee County District Court.   (*Id.*)   While on probation, he had multiple violations for failing to remain truthful with his probation officer, failing to complete batterer's intervention, testing positive for drugs, and having several "no call/no show" incidents for various required meetings.   (*Id.*)

While Mr. Mathews was still on probation in that case, he was arrested on February 2, 2014.   This incident led to his first federal indictment for felon in possession of a firearm in Case

---

[1] This Background section is compiled from the court's records.   This includes the allegations set forth in the petition and amended petition to revoke Mr. Mathews' probation.   He waived his right to preliminary hearings on those petitions and he now states that he intends to admit the alleged violations at his final revocation hearing.   The court has also considered the proffers in the government's brief, which are consistent with the information the U.S. Probation Office provided to the undersigned.   The court further notes that Mr. Mathews had an opportunity to file a reply brief, but he advised the court that he did not intend to file one.   It therefore appears to the court that there are no material factual disputes.

No. 14-40075.   He pleaded guilty and was sentenced to 18 months imprisonment and 3 years of supervised release.   (D. Kan. Case No. 14-40075, ECF No. 28.)

His supervised release in Case No. 14-40075 began June 4, 2015.   Four days later on June 8, he tested positive for marijuana.   (*Id.* ECF No. 31.)   Only about five months later, on November 7 he held a 9-millimeter handgun to a female victim's head, forced her to get into his vehicle, and took money from her.   When Topeka police officers arrested Mr. Mathews the following day, they smelled marijuana and saw him try to kick a marijuana baggie under the bed. He had another marijuana baggie on his person.   Officers also found a loaded 9-millimeter handgun, marijuana, and digital scales in the residence.   (*Id.*)   Based on the above violations, the U.S. Probation Office filed a petition to revoke his supervised release in Case No. 14-40075.

In addition, this November 7 incident also led to Mr. Mathews being indicted in this case. The indictment charged him with (Count 1) felon in possession of a firearm, (2) possession with the intent to distribute marijuana, and (3) possessing a firearm in furtherance of a drug trafficking crime.   (ECF No. 1.)   He pleaded guilty to Count 1 pursuant to a plea agreement and the court sentenced him to 24 months imprisonment and 2 years supervised release.   At the same time, the court revoked his supervised release in Case No. 14-40075 and sentenced him to 18 months imprisonment, concurrent to his term of imprisonment in this case.

Mr. Mathews was released to reside in a residential reentry center ("RRC")[2] when his supervised release began on May 7, 2019.   (ECF No. 28.)   On June 21 and July 2, he received RRC disciplinary reports for gambling and for submitting a urine sample that tested positive for

---

[2] As Mr. Mathews' projected release from the BOP approached, he did not have a viable release plan and believed he would be homeless.   (ECF No. 27.)   So, with Mr. Mathews' consent, his conditions of release were modified to require him to reside in an RRC upon his release.   (*Id.*)

K2. (ECF No. 57, at 2.) On July 5, he left the RRC to reside at a personal residence in Topeka. (*Id.*) On August 14—just 40 days after being released from the RRC—the U.S. Probation Office found him hiding from them in a closet at the residence of another individual on federal supervised release. (*Id.*) In that same closet, they found a backpack with 29.44 grams of marijuana and his cell phone. (*Id.*) Mr. Mathews later admitted he knew the marijuana was in the bag, but he said that he and the other defendant were holding onto it for a friend. (*Id.*) He also admitted to using K2 approximately 3 weeks prior. (*Id.*) At that time, Mr. Mathews was still unemployed despite the release condition requiring him to maintain or seek employment. (ECF No. 28.)

On August 16, with Mr. Mathews' consent, the court added release conditions to require him to wear a location monitoring device, abide by a curfew, and once again reside at the RRC—this time, for another 120 days with the aim of increasing monitoring of his job-searching strategies and criminal associations, and to provide a more structured environment to help him with gaining employment and achieving sobriety. (ECF No. 28.) Mr. Mathews was placed on location monitoring on August 21. (ECF No. 57, at 2.)

Just one week later on August 28, his supervising probation officer ("PO") found him sitting in a vehicle outside his apartment with Lamar Steele, whom the PO knew was also under federal supervision. (ECF No. 29.) When the PO approached the vehicle, Mr. Mathews got out of the vehicle and the driver sped off. (ECF No. 57, at 2.) When the PO asked Mr. Mathews who was driving the vehicle, Mr. Mathews initially gave a false name but then recanted and said it was Mr. Steele. (*Id.*)

On August 30, the U.S. Probation Office filed a petition to revoke Mr. Mathews' supervised release based on the violations described above. (ECF No. 29.) On September 3, he was arrested and appeared for an initial revocation hearing. He waived his right to a preliminary

hearing and the court ordered his continued release. (ECF No. 30, 32-33.) That same day, he was placed back at the Topeka RRC. (ECF No. 57, at 3.) While he was at the RRC, his final revocation hearing was continued several times and was ultimately set for February 10, 2020.

Meanwhile, Mr. Mathews was released from the RRC on December 6. (ECF No. 57, at 3.) He initially released to his reported girlfriend B.F.'s residence. On January 13, 2020, he moved in with a different girlfriend, D.S. (*Id.*) On January 26, Topeka police arrested Mr. Mathews after receiving reports of a domestic disturbance between him and D.S. (ECF No. 57, at 3.) After Mr. Mathews bonded from that arrest, he reported to his PO that he was back living at the address of his previous girlfriend, B.F.

On January 29, the U.S. Probation Office filed an amended petition to revoke Mr. Mathews' supervised release that added alleged violations based on his January 26 arrest for domestic violence. (ECF No. 44.) The next day, Mr. Mathews failed to report to his PO as directed. (ECF No. 57, at 3.) On February 8, a U.S. Probation Officer saw him at a local WalMart in Topeka with D.S.—the domestic violence victim from the January 26 incident who Mr. Mathews had been directed not to have contact with. When Topeka Police arrived at the WalMart to arrest Mr. Mathews, he fled from the store. On February 10, he failed to appear for his final revocation hearing before the district judge. (ECF No. 45.) On February 14, when the U.S. Marshal Service arrested Mr. Mathews, they found him hiding in a closet at D.S.'s residence. (ECF No. 57, at 3.)

On February 18, Mr. Mathews appeared before the court for an initial revocation hearing on the amended petition. (ECF No. 47.) He waived his right to a preliminary hearing and a detention hearing. On that basis, the court ordered him detained pending his final revocation hearing. (*Id.*) The final revocation hearing is set for May 18, 2020.

Mr. Mathews now seeks temporary release from custody.  He contends that he is at an increased risk of suffering serious health complications if he contracts COVID-19 at his detention facility, which he contends cannot handle his medical needs.  He therefore seeks release as "necessary . . . for another compelling reason" pursuant to 18 U.S.C. ss 3142(i), invoking the legal framework this court set forth in *United States v. Clark*.  After reviewing the motion, the court issued an order allowing supplemental briefing because § 3142(i) applies to defendants who are awaiting trial, not those who have been detained pending a final revocation hearing for supervised release violations.  (ECF No. 54.)  The court explained that release pending a hearing on probation or supervised release violations is governed by Federal Rules of Criminal Procedure 32.1(a)(6) and 46(d), and 18 U.S.C. § 3143(a)(1).  The court therefore encouraged the parties to focus their briefing on the applicable legal standard—namely, the issue of risk of flight and risk of danger under § 3143(a)(1).  (*Id.*)

## II.  RECONSIDERATION OF THE DETENTION ORDER BASED ON WAIVER

Mr. Mathews seeks temporary release pursuant to § 3142(i) on the grounds that he seeks to limit his potential exposure to coronavirus.  The court previously ordered Mr. Mathews detained pending his final revocation based on his waiver of his right to a detention hearing.  The relief he seeks now would essentially require the court to allow him to revoke his waiver. Therefore, the court construes his motion as seeking reconsideration of the court's prior detention order based on his waiver.  *See, e.g., United States v. Preston*, No. 3:18-CR-307-K, 2020 WL 1819888, at *2-*3 & n.1 (N.D. Tex. Apr. 11, 2020) (construing motion for release due to COVID-19 concerns as a motion to reconsider under the court's inherent powers where defendant was detained pending his final revocation hearing based on his waiver of a detention hearing).

Construed as such, the court is persuaded that Mr. Mathews has shown sufficient grounds for the court to reconsider its prior detention order in the sense that the court will allow him to revoke his detention waiver. Although Mr. Mathews' motion does not expressly say so, the gist of his arguments rely on the COVID-19 pandemic as justification to revoke his waiver. Mr. Mathews waived his right to a detention hearing on February 18. (ECF No. 49.) At that time, he could not have reasonably expected the unprecedented nature of the COVID-19 pandemic, the related public health guidelines, or the associated risks of being incarcerated. The court will therefore allow him to revoke his waiver and set aside the detention order that was based on that waiver. The court will also consider anew the issue of whether he should be detained based on the record before the court.

### III.      § 3142(i) Does Not Apply to Detention Pending a Final Revocation Hearing

Mr. Mathews' moves for temporary release on the grounds that release is "necessary . . . for another compelling reason" pursuant to § 3142(i). But the Federal Rules of Criminal Procedure make clear that § 3142(i) does not apply here. They provide that "[t]he provisions of 18 U.S.C. §§ 3142 and 3144 govern pretrial release," whereas Federal Rule of Criminal Procedure 32.1(a)(6) governs release pending a hearing on probation or supervised release violation. FED. R. CRIM. P. 46(a), (d). According to that rule, the magistrate judge "may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings." FED. R. CRIM. P. 32.1(a)(6). The court must therefore determine whether Mr. Mathews should be detained based on the legal standard set forth in § 3143(a)(1).

Under that statute, § 3142(i) does not apply to defendants awaiting sentencing who are subject to the § 3143(a) detention standard. *See United States v. Wills*, No. 19-40013-03-DDC, 2020 WL 1873622, at *3-*4 (D. Kan. Apr. 15, 2020); *United States v. Duncan*, Case No. 18-

40030-01-HLT, 2020 WL 1700355, at *5-*6 (D. Kan. Apr. 8, 2020).   For the same reasons, because detention of defendants who are awaiting sentencing on a petition to revoke supervised release is also governed by § 3143(a), the "compelling reasons" release standard set forth in § 3142(i) likewise does not apply to detention pending a final revocation hearing for supervised release violations.   Therefore, Mr. Mathews' motion is denied to the extent that he seeks relief under § 3124(i).

## IV.    Release Under § 3143(a)(1)

Even if the court construes Mr. Mathews' motion under the proper legal standard pursuant to § 3143(a)(1), he has not established that he is entitled to release.   That statute requires the court to order him detained if the court finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." § 3143(a)(1).   In the context of detention pending a final revocation hearing, "[t]he burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person."   FED. R. CRIM. P. 32.1(a)(6).   In making this determination, the court has considered the record set forth above along with U.S. Probation Office's recommendation.   The U.S. Probation Office does not support release because it believes Mr. Mathews is a risk of flight and a risk of harm to others.

Mr. Mathews' proposed release plan is to be discharged to home detention to live with B.F. in Topeka.   (ECF No. 52, at 8.)   He contends that he is not a flight risk or a risk of harm to others. But the record suggests otherwise.

Mr. Mathews already has three felony convictions.   The second two are federal firearms convictions—both felonies while he was on probation and/or supervised release for prior convictions.   Each time Mr. Mathews has been released from the RRC, within weeks he has had

significant violations involving associating with other known felons, using or possessing controlled substances, hiding from and lying to the U.S. Probation Office, fleeing from arrest at the Walmart in Topeka, not reporting to his PO, not appearing for his final revocation hearing on February 10, and hiding from the U.S. Marshal Service to try to evade arrest.

Mr. Mathews attempts to downplay his risk of flight. He argues he is a life-long Topeka resident, has strong family ties here and has no ties anywhere else, and does not have resources to flee. He also argues he would be on home confinement with GPS monitoring, which would provide a safeguard against flight. According to Mr. Mathews, he missed his scheduled court appearance on February 10, only because the notice got lost in his move from the halfway house to a private residence and it did not reach him in time, and he made a mistake about the date. However unlikely the court may find this explanation, even if the court were to accept it as true, it does not change the fact that U.S. Probation Officers found him hiding in a closet from them, that he failed to report to his PO on January 30, that he fled from law enforcement officers from a local Topeka Walmart on February 8 in order to evade arrest, and that he was captured days later on February 14 when the USMS found him hiding in D.S.'s closet. At this procedure juncture, it is Mr. Mathews' burden to show by clear and convincing evidence that he is not a risk of flight. He has not met this burden. To the contrary, it seems more probable that he will fail to appear and abscond from supervision and/or arrest.

Mr. Mathews also has not established by clear and convincing evidence that he is not a risk of harm to others if he were released. His proposed release plan is troubling. He proposes to live with K.B.—the original domestic abuse victim from his 2013 conviction. But the record reflects that Mr. Mathews has bounced back and forth between living with K.B. and D.S. since his release from the RRC in December 2019, and so the court considers his history of domestic

violence against them both.   His penchant for domestic violence has gone repeated and unabated right up until days before his arrest on the current amended petition to revoke his probation.   At age 19, he beat K.B. so badly that she was hospitalized with severe bruises all over her body and he was convicted of his first felony, aggravated battery.   He then failed to successfully complete batterer's intervention as required by his state court probation.   Only about five months after he began his supervised release in his first federal firearms case, he held a 9-millimeter handgun to a female victim's head, leading to yet another federal firearms charge.   After he was released from incarceration in that case, he spent months bouncing in and out of the RRC and was eventually released on December 6, 2019.   Less than two months later, he was arrested for yet another domestic disturbance—this time, involving D.S.—that led to the current amended petition to revoke his supervised release.   This incident occurred on January 26, at a time when he should have been sufficiently motivated to be on good behavior because his final revocation hearing was set only about two weeks later on February 10.   The court has little confidence that he will suddenly stop abusing women now, when repeated threats of federal incarceration have been insufficient to deter him previously.

In addition, the court believes Mr. Mathews' proposed release plan will increase COVID-19 risks to others.   He argues to the contrary, emphasizing that his home detention should not put his PO or law enforcement officers at risk, that he has already announced his intention to admit the alleged violations, and that he has "every reason to abide by all conditions of release to avoid further court entanglement."   Mr. Mathews' persistent history of noncompliance, his inability to remain law abiding, his penchant for abusing and using "girlfriends," and his repeated attempts to knowingly evade U.S. Probation and law enforcement officers who are tasked with ensuring that he complies with this court's orders is striking.   Mr. Mathews' inability to comply with his

conditions of release will likely increase the COVID-19 risks to others.   "A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody."   *United States v. Clark*, No. 19-40068-HLT, 2020 WL 1446895, at *7 (D. Kan. Mar. 25, 2020).

Mr. Mathews' originally sought release pursuant to § 3142(i) in view of his COVID-19 health concerns, but the arguments in his initial brief largely focused on reducing *his* COVID-19 risks.   For example, he argued that he will reside in the apartment only with B.F., that the two of them will abide by the state-wide stay-at-home order and have access to necessary items like soap, and that the apartment is close to major hospitals where he could obtain medical treatment if he suffers acute illness as a result of COVID-19.   However, these arguments are focused on reducing COVID-19 risks *to him*, not the risk of harm *to others*.   Therefore, the court finds these arguments inapposite under the applicable legal framework.

**IT IS THEREFORE ORDERED** that Mr. Mathews' Motion for Temporary Release is denied.

**IT IS SO ORDERED**.

Dated this 21st day of April, 2020.

s/Angel D. Mitchell
Angel D. Mitchell
United States Magistrate Judge