IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RONNIE DAVONE MATHEWS (01),

    Defendant.

Case No. 15-40094-01-DDC

**MEMORANDUM AND ORDER**

    This matter comes before the court on prisoner Ronnie Davone Mathews's Motion to Reduce Sentence under 18 U.S.C. § 3582(c) (Doc. 64). Mr. Mathews seeks to serve the remainder of his custody sentence in home confinement due to the COVID-19 pandemic. Doc. 64 at 1. The government has responded (Doc. 66). For reasons explained below, the court denies Mr. Mathews's motion.

    **I.**    **Background**

    In December 2015, a grand jury returned a three-count Indictment charging Mr. Mathews with one count of possession of a firearm by a prohibited person, one count of possession with intent to distribute marijuana, and one count of possession of a firearm during and in relation to a drug trafficking crime. Doc. 1 at 1–2. These charges, if proved beyond a reasonable doubt, would violate 18 U.S.C. § 922(g)(1) and §§ 924(c)(1)(A) and 2, and 21 U.S.C. § 841(a)(1). *Id.* at 1–3. In April 2016, Mr. Mathews entered a plea agreement with the government under Fed. R. Crim. P. 11(c)(1)(C). Docs. 16 & 17. He pleaded guilty to Count 1 of the Indictment. Doc. 17 at 1 (Plea Agreement). Count 1 charged a violation of 18 U.S.C. § 922(g)(1), possession of a firearm by a prohibited person. The Presentence Investigation Report ("PSR") calculated a total

offense level of 23 and a criminal history category of IV, producing a Guidelines sentencing range of 70 to 87 months' imprisonment.  Doc. 20 at 16 (PSR ¶ 80).  On July 20, 2016, the court sentenced Mr. Mathews to 24 months' imprisonment followed by two years of supervised release.  Doc. 22 at 2–3 (Judgment).  The court ordered that this sentence run consecutively to Mr. Mathews's sentence in a different criminal case, No. 14-40075-01-EFM.  *Id.* at 2 (Judgment).  This 24-month custody sentence represented a 66% reduction below the bottom rung of the Guidelines range.

Mr. Mathews began his term of supervised release on May 7, 2019.  Doc. 57 at 2 (Amended Violation Report ¶ 3).  He soon began violating the conditions of his supervised release, and the court revoked his supervised release on May 21, 2020.  Doc. 63 (Revocation Judgment).  The court sentenced him to six months' imprisonment followed by another two years of supervised release.  *Id.* at 2–3.

Mr. Mathews asserts he currently is incarcerated at a CoreCivic facility in Arizona.  Doc. 64 at 1.  He expects to be released from custody in mid-August and asserts that it does not appear he will be placed in Bureau of Prisons ("BOP") custody before his release.  *Id.*  So, he asserts, he has no warden to ask for release.  *Id.* at 2.  Since he has no warden to ask for release, Mr. Mathews contends he has exhausted his administrative remedies.  *Id.*

## II. Home Confinement under the CARES Act

Before a prisoner's release at the end of his custody sentence, the Director of BOP may "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2).  But the recently-enacted CARES Act expands the BOP's discretion in ordering home confinement.  It provides:  "the Director of [BOP] may lengthen the maximum amount of time for which the Director is authorized to place

a prisoner in home confinement under . . . [§] 3624(c)(2)." CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020).

Mr. Mathews asks the court to modify his sentence to "home confinement." Doc. 64 at 1. But the CARES Act authorizes the BOP—not the courts—to expand the use of home confinement. *United States v. Read-Forbes*, No. 12-20099-01-KHV, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision." (citation omitted)); *United States v. Boyles*, No. 18-20092-JAR, 2020 WL 1819887, at *2 n.10 (D. Kan. Apr. 10, 2020) (explaining that the CARES Act lengthens the duration that BOP's director may place an inmate in home confinement, and that this procedure is separate from the court's authority to reduce a sentence under the compassionate release statute, § 3582(c)(1)(A) (citing *United States v. Perry*, No. 18-cr-00480-PAB, 2020 WL 1676773, at *2 n.2 (D. Colo. Apr. 3, 2020)). In sum, the court lacks jurisdiction to order home confinement under this CARES Act provision.

### III. Compassionate Release

Although Mr. Mathews seeks home confinement, his motion invokes the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). Doc. 64 at 1–2. The court thus construes his motion as one asking for compassionate release, *i.e.*, a sentence reduction to time-served.

Binding authority from our Circuit establishes that "'[a] district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'" *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996)). Title 18 U.S.C. § 3582(c)—commonly called the compassionate release statute—permits a court to modify a

term of imprisonment but only if certain exceptions apply. For many years, these exceptions only permitted the BOP to bring a motion under the compassionate release statute. But in 2018, the First Step Act modified the compassionate release statute and authorized a defendant to file his own motion for relief. First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat. 5194, 5239 (2018). This amendment authorized an inmate to make such a motion, but only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

Mr. Mathews asserts that he has exhausted his administrative remedies. Doc. 64 at 2. He asserts that because he currently is incarcerated at a CoreCivic facility, he has no warden to ask for compassionate release. *Id.* The government acknowledges Mr. Mathews's situation, and asserts that it "waives any claim that [Mr. Mathews] is obligated to exhaust [h]is administrative remedies before seeking relief . . . ." Doc. 66 at 7 n.4.

In *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020), the Sixth Circuit treated § 3582(c)(1)(A)'s exhaustion requirement as a claim-processing rule, not a jurisdictional bar. *Id.* at 832–34. Although claim-processing rules don't implicate the court's subject matter jurisdiction, the court must enforce them when properly invoked. *Id.* at 833. But, if not invoked, claim-processing rules are subject to waiver and forfeiture. *Id.* at 834; *see also United States v. Spaulding*, 802 F.3d 1110, 1130–34 (10th Cir. 2015) (Gorsuch, J., dissenting) (explaining why "§ 3582(c) doesn't strip the district court of any of its preexisting post-judgment jurisdiction and is instead and again a claim-processing rule").

The Tenth Circuit hasn't yet decided whether § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional. So, the court must predict how our Circuit would decide the question. The

4

court finds the Sixth Circuit's decision highly persuasive and the court predicts the Tenth Circuit would adopt its reasoning. Consistent with *Alam*, the court treats § 3582(c)(1)(A)'s exhaustion requirement as a claim-processing rule.

Because Mr. Mathews has no warden to ask for release, he has satisfied the exhaustion requirement of § 3582(c)(1)(A). And, even if he hasn't, the government explicitly has waived any objections to the exhaustion requirement. So, the court turns to the substance of his motion.

### A. The court exercises its discretion when deciding whether "extraordinary and compelling" reasons exist.

Section 3582(c)(1)(A) authorizes district courts to reduce a term of imprisonment if, "after considering the factors set forth in Section 3553(a) to the extent that they are applicable," the court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's applicable policy statement is found in U.S.S.G. § 1B1.13. *United States v. Beck*, 425 F. Supp. 3d 573, 578 (M.D.N.C. 2019). As pertinent here, this policy statement provides that the court may reduce a term of imprisonment, after considering the § 3553(a) factors, if (1) "[e]xtraordinary and compelling reasons warrant the reduction," (2) "[t]he defendant is not a danger to the safety of any other person or the community," and (3) "[t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 provides that extraordinary and compelling reasons exist "under any of the [four] circumstances set forth below" in (A) through (D). *Id.* § 1B1.13 application notes 1. Subdivision (A) of Note 1 provides that the medical condition of a prisoner may qualify him for compassionate release, if (i) he is suffering from a terminal illness, or (ii) he is suffering from a serious physical or medical condition that "substantially diminishes" his

5

ability to provide self-care within the prison and he is not expected to recover. *Id.* § 1B1.13 application notes 1(A). Subdivisions (B) and (C) apply to age and family circumstances not invoked here. Subdivision (D) supplies a "catchall" provision: it applies when "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 application note 1(D).

Mr. Mathews plainly does not qualify under two of the four subdivisions in Note 1. He is not 65 years old (Subdivision (B)) and nothing suggests that the "family circumstances" addressed in Subdivision (C) apply. He also does not qualify under either of the two prongs described in Subdivision (A). Nothing suggests Mr. Mathews "is suffering from a terminal illness"—prong (i)—or, as prong (ii) requires, that he has contracted a "serious physical or medical condition" and he "is not expected to recover from" it.[1] *Id.* § 1B1.13 application note 1(A).

This leaves Subdivision (D). The guidance in this subsection advises that § 1B1.13 applies when "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" of application note 1.[2] *Id.* § 1B1.13 application note 1(D).

---

[1]   Prong (ii) also applies to "serious functional or cognitive impairment" and "deteriorating physical or mental health because of the aging process." § 1B1.13 application note (1)(A)(ii). Mr. Mathews's motion does not invoke these alternatives.

[2]   As explained above, in Section II, § 3582 used to permit the BOP—but not inmates—to file a compassionate release motion. *See* First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat. 5194, 5239 (2018). The Sentencing Commission hasn't revised § 1B1.13 of the Guidelines since that amendment and so, the language used in this provision still requires a motion by BOP. *See United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *3 (D. Kan. May 29, 2020). But the First Step Act obviated this requirement.

A few courts have ruled that only the BOP may invoke the "catchall" provision of subdivision (D). *Id.* *Jackson* summarized the reasoning of one such decision:

> Congress gave the Sentencing Commission the mandate to decide what constitutes an extraordinary and compelling reason; the [First Step Act] did not expand the criteria for finding such a reason, but merely allowed defendants to file motions; there can be no relief under this statute without consistency with the policy statement; and the policy statement does not presently provide for a court determination of other reasons.

*Jackson*, 2020 WL 2812764, at *3 (citing *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019)). But an "overwhelming majority of courts" have rejected this approach. *Id.* Instead, they have "concluded that a court may make the necessary determination that other circumstances warrant relief under this statute." *Id.* (citations omitted). In other words, "[w]hile the old policy statement provides helpful guidance, it does not constrain the [c]ourt's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." *Beck*, 425 F. Supp. 3d at 579; *see also Jackson*, 2020 WL 2812764, at *3 (assuming, for purposes of deciding the motion, that court is not limited to circumstances set forth in subdivisions (A) through (C)); *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020) ("In the wake of the First Step Act, numerous courts have recognized the court can determine whether extraordinary and compelling reasons exist to modify a sentence—and may do so under the 'catch all' provision . . . ."); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (concluding that the correct interpretation of § 3582(c)(1)(A) is that when a defendant brings a motion for a sentence reduction under the amended provision, the court can determine whether extraordinary and compelling reasons—outside those delineated in subdivisions (A)–(C)—warrant granting relief).

The court joins this prevailing view, concluding that it may decide whether "extraordinary and compelling" reasons warrant compassionate release.

### B. Mr. Mathews has not established that "extraordinary and compelling reasons" warrant compassionate release.

Mr. Mathews contends he has asthma, "which makes him more vulnerable to the virus." Doc. 64 at 5. The government asserts that although Mr. Mathews has asthma, his motion "fails to demonstrate a situation so severe that immediate release from prison is warranted." Doc. 66 at 15.

To be sure, it is regrettable that Mr. Mathews is incarcerated during this pandemic. It is also regrettable that he has an asthma condition. *See Coronavirus Disease 2019 (COVID-19)*, Centers for Disease Control and Prevention (Apr. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html ("People with moderate to severe asthma may be at higher risk of getting very sick from COVID-19."). But the court isn't convinced that the combination of those two conditions qualifies him for release. The court reaches this conclusion "after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent that they are applicable"—the rubric § 3582(c)(1)(A) instructs the court to follow. Four of those statutory sentencing factors are particularly germane here. The next four paragraphs discuss them.

#### 1. Nature and Circumstances of the Offense

The following facts come from the PSR (Doc. 20) and the Amended Violation Report (Doc. 57).

On November 7, 2015, officers arrived at a residence in Topeka, Kansas, because of a robbery that had occurred. Doc. 20 at 5 (PSR ¶ 12). The officers learned from the victim—Lindsey Munoz—that as she had walked out of her house, someone she knew as "Luke Gunner"

pointed a handgun at her head and ordered her to "get in the car." *Id.* At first, Ms. Munoz reported, she thought "Gunner" was joking. *Id.* (PSR ¶ 13). But Gunner told her he was serious and ordered her in the truck. *Id.* He began driving and "told her to give him her money." *Id.* After she initially resisted, Gunner put the barrel of the gun in her mouth and ordered her to give him the money. *Id.* She handed over her wallet, which contained $650. *Id.* After she produced the wallet, Gunner let her leave the truck. *Id.* Officers soon discovered that "Luke Gunner" actually was Mr. Mathews. *Id.*

On November 8, 2015, officers found Mr. Mathews at the home of his girlfriend, Auburie Engel. *Id.* (PSR ¶ 14). When officers apprehended him, he kicked a bag of marijuana under the bed. *Id.* Officers also found a bag of marijuana in his pocket. *Id.* Later, officers executed a search warrant of Ms. Engel's home and car. *Id.* (PSR ¶ 15). Officers seized the bag of marijuana Mr. Mathews had kicked under the bed, a cell phone, and a firearm in "the closet of the bedroom inside a Z Hair Academy bag." *Id.* The bag also contained papers in the name of "Luke Gunner." *Id.* The firearm—later confirmed as having been stolen—was loaded, with a magazine and bullet in the chamber. *Id.*

Mr. Mathews served the custody component of his sentence on the underlying offense and commenced his two-year term of supervised release on May 7, 2019. Doc. 57 at 2 (Amended Violation Report ¶ 3). He began his term of supervised release at the Residential Reentry Center ("RRC") in Topeka, Kansas. *Id.* During Mr. Mathews's stay at RRC, he received a disciplinary report for gambling. *Id.* (Amended Violation Report ¶ 5). He also violated RRC rules by providing a urine sample that tested positive for synthetic marijuana. *Id.* On July 5, 2019, RRC released Mr. Mathews. *Id.* (Amended Violation Report ¶ 6). On August 14, 2019, probation officers found Mr. Mathews hiding in the closet of a home of someone under

federal supervision. *Id.* (Amended Violation Report ¶ 7). A few weeks later, a probation officer found him sitting outside his apartment in the car of another person under federal supervision. *Id.*

The United States Marshals Service arrested Mr. Mathews on September 3, 2019 on his petition seeking revocation of his supervised release. *Id.* at 3 (Amended Violation Report ¶ 11). Mr. Mathews completed another placement at RRC, and then reported to his girlfriend's home on December 6, 2019. *Id.* (Amended Violation Report ¶ 12). He later moved in with a different girlfriend. *Id.* (Amended Violation Report ¶ 12). Then, in January 2020, Topeka, Kansas police officers arrested him because of a "domestic altercation" with this girlfriend. *Id.* (Amended Violation Report ¶ 13). After his arrest, Mr. Mathews failed to report to the U.S. Probation Office, as required, on January 30, 2020. *Id.* (Amended Violation Report ¶ 14). Then, after Mr. Mathews failed to appear for a court hearing on February 10, 2020, the United States Marshals Service arrested Mr. Mathews while he hid in a closet in his girlfriend's home. *Id.* (Amended Violation Report ¶ 16). To conclude with the obvious, Mr. Mathews's underlying offense was a serious felony, and he consistently has failed to comply with the conditions of his supervised release.

### 2. History and Characteristics of the Defendant

Mr. Mathews was 22 years old when sentenced for the underlying conviction in this case. Doc. 20 at 2 (PSR). It was not his first serious offense. He had another felon-in-possession of a firearm conviction in this court in 2015. Doc. 20 at 9 (PSR ¶ 39). In that case, Judge Melgren sentenced Mr. Mathews to 18 months' imprisonment followed by three years of supervised release. *Id.* While on supervised release for that offense, he engaged in the conduct described in the section above, resulting in another conviction. Doc. 57 at 1–2 (Amended Violation Report

¶ 2). Mr. Mathews now is incarcerated because of supervised release violations for this conviction. Mr. Mathews also has two other adult criminal convictions in Shawnee County, Kansas District Court. Doc. 20 at 8–9 (PSR ¶¶ 37, 38). One of those convictions was for possession of a controlled substance. *Id.* at 8 (PSR ¶ 37). The other was for aggravated battery. *Id.* at 9 (PSR ¶ 38). The PSR reports that this conviction resulted from a domestic disturbance where the victim reported that Mr. Mathews had punched and kicked her. *Id.* Mr. Mathews served a probation sentence for that offense. *Id.* According to the PSR, Mr. Mathews had "multiple" probation violations. *Id.* These conditions produced a substantial criminal history score for Mr. Mathews's underlying conviction—seven points for a category IV classification. *Id.* at 10 (PSR ¶ 42).

### 3. The Need for the Sentence to Reflect the Offense's Seriousness, to Provide Just Punishment, and to Afford Adequate Deterrence to Criminal Conduct

When the court sentenced Mr. Mathews for his supervised release violations, it adhered to the statutory mandate that it impose a sentence that was "not greater than necessary." 18 U.S.C. § 3553(a). Mr. Mathews received a sufficient but judicious sentence. Mr. Mathews's Guidelines sentencing range for his supervised release violations was 6 to 12 months' imprisonment. He received a 6-month custody sentence, consistent with the bottom rung of the Guidelines range. Reducing his custody sentence to time-served would produce a sentence that no longer reflects the seriousness of Mr. Mathews's criminal conduct. And, Mr. Mathews's sentence for his underlying conviction represented a 66% reduction below the Guidelines range. A reduced sentence no longer would furnish adequate deterrence to criminal conduct or provide just punishment.

### 4. The Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant

Reducing Mr. Mathews's sentence to time-served would reduce it below the applicable sentencing range. No new factor justifies such a departure.[3]

### C. Conclusion

In sum, the pertinent sentencing factors in 18 U.S.C. § 3553(a) do not favor the relief Mr. Mathews's motion seeks. Mr. Mathews has an asthma condition and, he asserts, is approaching the end of his custody sentence. But the court is not prepared to accept that Mr. Mathews's asthma condition provides sufficient reason for his early release under § 3582(c)(1)(A). The court thus denies Mr. Mathews's Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A) (Doc. 64).

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Mathews's Motion to Reduce Sentence under 18 U.S.C. § 3582(c) (Doc. 64) is denied.

**IT IS SO ORDERED.**

**Dated this 28th day of July, 2020, at Kansas City, Kansas.**

                s/ Daniel D. Crabtree
                Daniel D. Crabtree
                United States District Judge

---

[3] The court is mindful of the other factors identified by § 3553(a). They are not pertinent, however, to the current motion.